UNITED STATES of America, Appellee,

v.

Giuseppe GAMBINO, a/k/a "Joe," and
Matteo Romano,
Defendants–Appellants.

Nos. 1344, 1345, Dockets
90–1104, 90–1106.

United States Court of Appeals,
Second Circuit.

Argued May 7, 1990.

Decided Dec. 10, 1990.

Judd Burstein, New York City (Wendy A. Rothstein, New York City, of counsel) for defendant-appellant Gambino.

Gerald L. Shargel, New York City (Gail E. Laser, New York City, of counsel) for defendant-appellant Romano.

Andrew C. McCarthy, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Frances M. Fragos and Helen Gredd, Asst. U.S. Attys., New York City, of counsel) for appellee.

Before ALTIMARI and MAHONEY, Circuit Judges, and POLLACK,* Senior District Judge.

* The Honorable Milton Pollack, United States District Court for the Southern District of New York, sitting by designation.

ALTIMARI, Circuit Judge:

Giuseppe Gambino and Matteo Romano appeal from an order, entered in the United States District Court for the Southern District of New York (Peter K. Leisure, *Judge*), denying their motions to dismiss a sixth superceding indictment, SSSSSS 88 Cr. 919 (PKL), which charges them with conspiracy to import heroin and cocaine and conspiracy to distribute heroin and cocaine. 729 F.Supp. 954. The indictment also charges Gambino with conducting a continuing criminal enterprise ("CCE"), and charges both Gambino and Romano with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In previous prosecutions, Gambino and Romano were acquitted of conspiracy to import heroin and of conspiracy to import and distribute heroin and cocaine, respectively. According to Gambino and Romano, prosecution under the sixth superceding indictment is barred by double jeopardy principles. For the reasons set forth below, the order of the district court is affirmed, in part, reversed, in part, and remanded for the district court's consideration of whether to dismiss, with leave to re-present, Counts One and Two of the indictment against Gambino or to order redaction of the offending portions of the indictment. We affirm the court's order in all other respects.

## BACKGROUND

### A. *Gambino I.*

In 1981, Gambino was acquitted by a jury of charges that he conspired, between August 1, 1979 and March 18, 1980, to import heroin to the United States. *United States v. Gambino*, 80 Cr. 131 (E.D.N.Y.) (Neaher, J.) ("*Gambino I*"). In *Gambino I*, the government alleged that defendant Gambino supervised and financed a conspiracy to import in excess of forty kilograms of heroin from Italy to the United States. At trial, the government focused on a fifteen-day period, from March 3, 1980 to March 18, 1980, during which Gambino and his co-conspirators allegedly planned an ultimately unsuccessful trip to Italy for that purpose.

The government's evidence in *Gambino I* consisted primarily of testimony from Frank Rolli, a government informant who allegedly conspired with Gambino and co-defendant Emanuele Adamita in the heroin importation scheme. Rolli testified that he met with Gambino and Adamita in Brooklyn on two occasions in March 1980; that the three men discussed a plan to smuggle heroin through customs at Kennedy Airport; that Gambino agreed to pay him $30,000 for his assistance; that Rolli and Adamita travelled to Italy in order to obtain the heroin; and that, once in Italy, the amount of heroin to be imported increased from ten kilograms to forty kilograms. This heroin was seized at Kennedy Airport and Gambino was subsequently arrested, prosecuted and acquitted.

### B. *Adamita.*

In 1989, Romano was acquitted by a jury of charges that he conspired to import and distribute heroin and cocaine. *United States v. Adamita*, SSS 88 Cr. 217 (S.D.N.Y.) (Sprizzo, J.) ("*Adamita*"). The indictment in *Adamita* alleged that Romano, along with 26 co-defendants, conspired to import narcotics from Italy to various cities in the United States between January 1, 1985 and June 30, 1988. The indictment cited some 105 overt acts, including the use of couriers to transport cocaine to Italy in order to exchange the cocaine for heroin and return the heroin to the United States. The indictment also alleged that legitimate businesses, including pizza parlors and a clothing store, were used as fronts to distribute the narcotics. Romano was named in four of the indictment's overt acts, including several meetings with co-defendant Adamita. Romano was eventually tried, along with thirteen co-defendants, and was acquitted.

### C. *The present indictment.*

On December 14, 1989, the Grand Jury returned a sixth superceding indictment, SSSSSS 88 Cr. 919, charging seven counts against some fifteen defendants, including Gambino and Romano. The indictment alleged a large-scale narcotics conspiracy,

spanning almost fifteen years, and involving an international organization known as "the Mafia" or "La Cosa Nostra." Originally, both Gambino and Romano were named in Counts One and Two of the indictment. However, during the pendency of this appeal, the government determined not to pursue its prosecution on Counts One and Two against Romano. The government filed a motion, which was granted, to remand those counts to enable it to file a *nolle prosequi* as to Romano. This *nolle prosequi* will also result in the deletion of Romano's name from the corresponding RICO predicate acts.

Count One of the sixth superceding indictment charges that, between January 1, 1975 and the date the indictment was filed, the defendants participated in a conspiracy to import heroin and cocaine into the United States, in violation of 21 U.S.C. § 963 (1988). This conspiracy allegedly involved the international smuggling, as well as primary and secondary wholesale distribution, of narcotics. Count One enumerates 172 overt acts, including specific narcotics transactions, meetings, and communications between defendants and their co-conspirators. Gambino is named in more than forty of those overt acts, including two overt acts related to his participation in the March 1980 heroin importation scheme. In a seventh superceding indictment, filed shortly before the district court rendered its decision on the underlying motion, the government alleged eleven additional overt acts, all of which name Gambino.

Count Two of the indictment alleges that the defendants conspired to distribute or to possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (1988). This count incorporates the overt acts alleged in Count One.

Defendant Gambino is charged in Count Three of the indictment with organizing and supervising a CCE, in violation of 21 U.S.C. §§ 848(a) & (b) (1988). This count incorporates the violations alleged in Counts One and Two and alleges that Gambino supervised the CCE from January 1, 1975 to the date of the indictment.

Count Seven of the indictment charges that Gambino and Romano, along with their co-defendants, conspired to conduct a racketeering enterprise, in violation of RICO, 18 U.S.C. § 1962(d) (1988). Count Seven alleges a pattern of racketeering activity consisting of forty-two predicate acts, including narcotics transactions, bribery, extortion, gambling, murder, and obstruction of justice, occurring between January 1, 1970 and the date of the indictment. The predicate acts in which Gambino and Romano are both named include: possessing more than 500 grams of cocaine with intent to distribute on or about June 29, 1987; bribing a public official in February 1987 in order to facilitate the escape from federal custody of a co-defendant; travelling interstate in March 1987 in aid of racketeering activities; conspiring to make extortionate extensions of credit from January 1, 1975 to September 1, 1989; and conspiring during the same time period to use extortionate means to collect extensions of credit. In the seventh superceding indictment, the government alleged five additional predicate acts to support the racketeering conspiracy alleged in Count Seven.

### D. *The motion to dismiss.*

On September 29, 1989, Gambino and Romano each moved to dismiss various counts of the sixth superceding indictment on the ground that prosecution on those counts violates the double jeopardy clause of the fifth amendment. According to Gambino, the overt acts alleged in the Count One importation conspiracy reflect conduct for which he was prosecuted in *Gambino I.* Further, Gambino argued that his prosecution for the Count Two distribution conspiracy is barred under the collateral estoppel principle. Gambino also argued that the Count Three continuing criminal enterprise charge is a lesser included offense of Counts One and Two and, therefore, should be dismissed. Finally, Gambino contended, in the alternative, that the government should be collaterally estopped from introducing any evidence of the March 1980 attempted importation of heroin since he was acquitted of that offense.

According to Romano, his prosecution for Counts One, Two and Seven of the

sixth superceding indictment is barred by his acquittal in *Adamita.* His challenge to the prosecution of Counts One and Two is rendered moot by the government's decision to file a *nolle prosequi* on those counts. However, Romano maintains his argument that the prosecution for conspiracy to violate RICO (Count Seven) is barred by the previous prosecution of various alleged predicate acts.

In response to Gambino's motion, the government argued that *Gambino I* concerned a single, fifteen-day narcotics conspiracy, while Counts One and Two of the sixth superceding indictment allege an extensive narcotics conspiracy spanning nearly fifteen years. The government also contended that, since Count Two (conspiracy to distribute) and Count Three (CCE) are statutorily distinct offenses from the offense charged in *Gambino I,* double jeopardy does not bar prosecution on those counts. Finally, the government argued that Gambino had not met his burden of proving that his acquittal in *Gambino I* entailed a finding that he had no involvement in the March 1980 importation scheme. In support of these arguments, the government proffered much of the evidence that it intended to introduce at trial. It also summarized the evidence presented in *Gambino I* and submitted the available transcripts from that trial to the court.

With respect to Romano's challenge to Count Seven, the government argued that Romano could be prosecuted under RICO because he had never before been charged with a RICO conspiracy, nor had he previously been charged with several of the alleged predicate acts.

On January 25, 1990, the district court issued an opinion and order denying the defendants' double jeopardy challenges to the indictment. The court conducted a thorough analysis of defendants' double jeopardy claims, applying the factors set forth in *United States v. Korfant,* 771 F.2d 660 (2d Cir.1985) (per curiam). It concluded that, under *Korfant,* Gambino's prosecution on Count One was not barred by his acquittal in *Gambino I.* It further determined that Gambino could be prosecuted on Count Two since it alleged a statutory of-

fense different from that alleged in *Gambino I.* Finally, since Gambino's challenge to Count Three rested on his attacks on Counts One and Two, the court rejected that challenge. The court did, however, partially grant Gambino's motion to preclude the introduction of evidence of his involvement in the March 1980 plan to import heroin. Finding that the jury's verdict in *Gambino I* reflected a judgment about the credibility of Frank Rolli's testimony, the court ruled that this evidence could not be introduced to establish the conspiracy to import narcotics alleged in Count One. Evidence of the March 1980 scheme remained admissible in the government's prosecution of the conspiracy to distribute narcotics charged in Count Two, however, because the factual issues raised by this charge differ from those raised by the importation conspiracy charged in *Gambino I.*

The district court denied Romano's motion to dismiss Count Seven, finding that it alleged significant criminal activity for which he was not prosecuted in *Adamita.*

This appeal followed.

## DISCUSSION

### I. *Counts One and Two.*

In reaching its decision, the district court applied the principle that the successive prosecution of conspiracies is barred by double jeopardy if "the offenses charged [are] in fact and in law the same." *United States v. Armedo–Sarmiento,* 545 F.2d 785, 792 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). Its determination was guided by the *Korfant* factors, which include:

(1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Korfant,* 771 F.2d at 662; *see United States v. Reiter,* 848 F.2d 336, 340 (2d Cir.1988). Based on these factors, the court concluded that prosecution on Counts

One and Two was not barred by the defendants' previous prosecutions.

■ On May 29, 1990, some twenty-two days after this appeal was heard, the Supreme Court announced its decision in *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In *Grady,* the Court held that a state prosecution for vehicular homicide was barred by the defendant's previous misdemeanor convictions for driving while intoxicated and failing to keep right of the median—conduct specified in the homicide bill of particulars to establish the element of negligence or recklessness. *Id.* 110 S.Ct. at 2094. The Court noted, however, that the prosecution would have been permissible "if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted." *Id.*

*Grady* significantly altered the jurisprudential landscape of double jeopardy, supplementing the traditional inquiry required by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny.[1] According to *Grady:* "[T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady,* 110 S.Ct. at 2087. The Court rejected a "same evidence" approach, *id.* at 2093 n. 12, and instead focused on the government's use of previously prosecuted conduct "to establish an essential element" of the offense charged in the second prosecution, *id.* at 2087.

This "same conduct" test applies equally to successive prosecutions in "single transaction" cases, such as *Grady* itself, and conspiracy cases. *United States v. Calderone,* 917 F.2d 717, 721 (2d Cir.1990). In *Calderone,* a divided panel held that defendants' acquittal on charges of participating in a wide-ranging, multi-drug conspiracy barred a subsequent prosecution alleging a narrower, single-drug conspiracy. The Court reasoned that the "conduct that con-

stitutes an offense" in a conspiracy prosecution is that conduct from which the jury may infer the existence of an agreement. *Id.* at 721. It concluded that "[u]nder *Grady,* this conduct may not be prosecuted a second time in order to establish an 'agreement' that differs from the first crime only in that the indictment happens to describe it differently." *Id.* at 721. Accordingly, the *Korfant* factors applied by the district court are inadequate to satisfy double jeopardy concerns after *Grady. Id.* at 721 ("To the extent that *Korfant* and our other opinions in this area conflict with *Grady,* they are no longer good law.").

■ With these principles in mind, we believe it appropriate to vacate the district court's order and remand for the court's consideration of whether to dismiss, with leave to re-present, Counts One and Two of the indictment against Gambino or to order redaction of the offending portions of the indictment. Because these counts rest, at least partially, on overt acts for which Gambino has been previously prosecuted, they may not remain in the indictment against Gambino.

## II. *Counts Three and Seven.*

■ The infirmity of Counts One and Two does not extend to Counts Three and Seven. While *Grady* announces a significant change in our approach to most successive prosecutions, we decline to read into *Grady* a disavowal of all prior double jeopardy precedent. Thus, our view on the propriety of proving previously prosecuted conduct as predicate acts in a subsequent CCE or RICO prosecution is unaltered. *See United States v. Scarpa,* 913 F.2d 993, 1014 n. 8 (2d Cir.1990). The permissibility of such subsequent prosecutions, in cases involving alleged predicate acts occurring after the initial prosecution, is well-established in this Circuit. *See United States v. Persico,* 774 F.2d 30, 32 (2d Cir.1985); *United States v. Amen,* 831 F.2d 373, 381 (2d Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988). These decisions rest on the Supreme Court's holding in *Garrett v. United*

---

1. At the Court's request, the parties submitted letter-briefs addressing the impact of *Grady* on the present case.

*States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), that, if the government shows conduct subsequent to a prosecution, "it does not violate the Double Jeopardy Clause ... to prosecute the CCE offense after a prior conviction for one of the predicate offenses." *Id.* at 793, 105 S.Ct. at 2418. *See also id.* at 798, 105 S.Ct. at 2421 (O'Connor, J., concurring). In other words, "[o]ne who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." *Id.* at 790, 105 S.Ct. at 2417.

That the principles underlying *Garrett* survive *Grady* is rooted in the admonition that double jeopardy principles developed in the "classically simple situation presented in" single transaction cases not be readily transposed to the "multilayered conduct, both as to time and to place involved" in CCE and RICO cases. *Id.* at 789, 105 S.Ct. at 2416. CCE and RICO are "compound-complex felonies," *United States v. Pungitore,* 910 F.2d 1084, 1109 (3d Cir.1990), which often cannot be charged until after their individual predicate acts have been prosecuted. *See Garrett,* 471 U.S. at 788–89, 105 S.Ct. at 2416–17 (at time of initial prosecution, "it could not then have been said with any certainty that [defendant] would necessarily go ahead and commit the other violations required to render him liable on a CCE charge"). A similar exception was addressed in *Grady:*

> We recognized in *Brown v. Ohio,* 432 U.S. 161, 169, and n. 7 [97 S.Ct. 2221, 2227, and n. 7, 53 L.Ed.2d 187] (1977), that when application of our traditional double jeopardy analysis would bar a subsequent prosecution, "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence."

*Grady,* 110 S.Ct. at 2090 n. 7.

This case presents just such a situation because several of the predicate acts constituting the CCE charged against Gambino and the RICO conspiracy charged against Gambino and Romano occurred after their previous prosecutions.[2] Gambino's alleged criminal conduct, which underpins the CCE and RICO charges, continued well past his 1981 acquittal in *Gambino I.* This activity includes participating, in 1987 and 1988, in obtaining some twenty kilograms of cocaine, facilitating the escape, in 1987, of a co-defendant from INS detention in Florida, and negotiating narcotics transactions through March 1988. Romano's alleged criminal activity continued beyond his 1989 acquittal in *Adamita,* and includes participating in an extortionate credit conspiracy, using the telephone to facilitate narcotics trafficking, and continuing to conspire to import and distribute narcotics. It should be noted that this case is unlike *United States v. Russo,* 906 F.2d 77 (2d Cir.1990) (per curiam), in which the government conceded that a subsequent prosecution for conduct that constituted predicate acts in a previous RICO conspiracy prosecution was barred. *But see United States v. Esposito,* 912 F.2d 60, 64–65 (3d Cir. 1990) (prosecution for individual predicate acts following acquittal on RICO charge not barred by double jeopardy).

*Grady* does not disturb this rationale. In fact, given the opportunity to expressly overrule *Garrett,* the Court in *Grady* cited the case with apparent approval. *See Grady,* 110 S.Ct. at 2090–91, 2094 n. 15; *see also Pungitore,* 910 F.2d at 1111 n. 29 ("We dismiss out of hand the possibility that *Grady* overruled *Garrett.* If the Supreme Court on such grossly dissimilar facts intended to abandon *Garrett,* we think it would have said so. Instead, both the majority and the dissent in *Grady* cited *Garrett* without ever hinting that *Garrett* no longer was good law.").

Accordingly, Count Three's CCE charge and Count Seven's RICO conspiracy charge may properly be prosecuted under the present indictment. It should be noted

---

**2.** In his letter-brief, filed at the Court's request, Gambino challenges the RICO charge on the basis that it includes, as predicate acts, conduct for which he was previously prosecuted. Though this claim was not made in Gambino's initial brief, we address it along with the identical claim of Romano.

that, while the prosecution of Counts Three and Seven is not barred by double jeopardy, the rules of evidence remain applicable. The district court recognized this constraint by precluding the introduction of Frank Rolli's testimony against Gambino on Count One and by "forewarn[ing]" that it would consider at trial the admissibility under Fed.R.Evid. 403 of this testimony on Count Two. We leave to the district court's wise discretion the continued application of the rules to ensure the fair prosecution of Counts Three and Seven.

### CONCLUSION

For the reasons discussed above, we hold that the prosecution of Gambino on Counts One and Two is barred by double jeopardy. We further hold that the prosecution of Gambino on Count Three and the prosecution of Gambino and Romano on Count Seven is not barred by double jeopardy. Accordingly, the order of the district court is affirmed, in part, and reversed, in part, and remanded. Upon remand, the district court shall consider whether to dismiss, with leave to re-present, Counts One and Two of the indictment or to order redaction of the offending portions of the indictment.