**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James A. O'CONNOR, Defendant–Appellant.**

**No. 90–3105.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1991.

Decided Jan. 28, 1992.

Mel S. Johnson (argued), Matthew V. Richmond, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Leonard D. Kachinsky, Neenah, Wis. (argued), for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

James O'Connor was convicted of racketeering in violation of 18 U.S.C. § 1962(c) (RICO). Among the predicate acts alleged in support of the RICO charge were crimes for which Mr. O'Connor had already been prosecuted in federal court. Mr. O'Connor moved to strike those predicate acts, based on the Double Jeopardy Clause. The district court denied the motion. Mr. O'Connor now claims that the denial of his motion to strike the predicate acts constituted reversible error. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

On March 6, 1990, Mr. O'Connor was charged in a four-count indictment. Count one charged him with conducting the affairs of his business enterprise through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). Counts two through four charged him with conspiracy to commit arson, arson, and obstruction of justice. This appeal centers on count one. Under count one, the government alleged that a series of eight racketeering acts constituted the pattern of racketeering activity required by RICO. Three of the racketeering acts are relevant to this appeal. Racketeering act one alleged receipt of stolen goods from interstate commerce. Mr. O'Connor had been convicted in 1975 in federal court in Louisiana of conspiring to commit this offense. Racketeering act three alleged instances of wire fraud. Mr. O'Connor had been convicted in federal court in Wisconsin of these offenses in 1988. Racketeering act five alleged wire fraud as well as interstate travel to carry out a fraudulent scheme. Mr. O'Connor also had been convicted of these crimes in his 1988 trial in federal court in Wisconsin. Prior to trial, the government stated its intention to rely on Mr. O'Connor's prior convictions to prove these racketeering acts. Mr. O'Connor moved to strike racketeering acts one, three, and five. He maintained that the government's use of crimes for which he had been previously prosecuted and convicted in federal court would violate the Double Jeopardy Clause of the Fifth Amendment. The district court denied Mr. O'Connor's motion. Subsequently a jury convicted Mr. O'Connor on all four counts of the indictment. Mr. O'Connor filed a timely notice of appeal.

## II

## ANALYSIS

To support a RICO conviction, the government must prove that the defendant

has engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a pattern of racketeering activity, the government must prove at least two acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Moreover, the "prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1988) (emphasis in original); *United States v. Muskovsky*, 863 F.2d 1319, 1329 (7th Cir.1988), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989).

In *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), the Supreme Court held that prosecution for a continuing criminal enterprise (CCE) offense after an earlier prosecution for one of the predicate offenses is constitutional under the Double Jeopardy Clause of the Fifth Amendment.[1] In so holding, the Court noted that the " 'lesser included offense' principles of double jeopardy" were not susceptible of ready transposition from "the classically simple situation" of a single, discrete crime[2] to the "multilayered conduct," which was involved in *Garrett*.[3] *Garrett*, 471 U.S. at 789, 105 S.Ct. at 2416.

### A.

■ Mr. O'Connor argues that the Supreme Court's recent decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), overruled *Garrett* and mandates reversal of his RICO conviction. The defendant in *Grady* caused the death of one person and the serious injury of another when his vehicle crossed the center line and struck oncoming vehicles. He was issued traffic tickets for the misdemeanor of driving while intoxicated and for failing to keep to the right of the median and pleaded guilty to both charges. In a later proceeding, the defendant was prosecuted for reckless manslaughter, criminally negligent homicide, and third-degree reckless assault. The prosecution filed a bill of particulars that identified the three reckless or negligent acts on which it would rely to prove the homicide and assault charges: operating a motor vehicle while intoxicated, failing to keep to the right of the median, and driving at an excessive rate of speed for the weather and road conditions. *Grady*, 110 S.Ct. at 2089. Under these facts, the Supreme Court ruled that the Double Jeopardy Clause barred the later prosecution.

Mr. O'Connor argues that *Grady* compels us to find that the government's prosecution of him under RICO violated the Double Jeopardy Clause. He points to the holding in *Grady*: "[T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the Government will have to prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* 110 S.Ct. at 2087. Mr. O'Connor maintains that by including predicate acts for which he had already been convicted, the government sought to establish an essential element of the RICO charge by "prov[ing] conduct that constitute[d] an offense for

1. The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

2. The Court cited *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), in which the defendant was prosecuted first for joyriding and later for auto theft in connection with the same incident. The second prosecution was held to violate the Fifth Amendment.

3. *Garrett* dealt with a continuing criminal enterprise under 18 U.S.C. § 848. *Garrett*'s analysis has been held to apply to RICO as well. *See,*

*e.g., United States v. Caporale*, 806 F.2d 1487, 1517 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *United States v. Grayson*, 795 F.2d 278 (3d Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); *United States v. Persico*, 774 F.2d 30 (2d Cir.1985); *United States v. Black*, 759 F.2d 71 (D.C.Cir.1985); *United States v. Kalish*, 734 F.2d 194 (5th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 321 (1985); *United States v. Licavoli*, 725 F.2d 1040 (6th Cir.), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *United States v. Aleman*, 609 F.2d 298 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

which he had already been prosecuted." [4]

We are not the first circuit to confront the question of whether *Garrett*'s vitality remains undisturbed by *Grady*. Not surprisingly, a number of RICO and CCE appeals followed on the heels of *Grady*. Thus, we are aided in our analysis by recent decisions in several circuits: *United States v. Evans*, 951 F.2d 729 (6th Cir. 1991); *United States v. Arnoldt*, 947 F.2d 1120 (4th Cir.1991); *United States v. LeQuire*, 943 F.2d 1554 (11th Cir.1991); *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991); *United States v. Gambino*, 920 F.2d 1108 (2d Cir. 1990), *cert. denied*, — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); *United States v. Scarpa*, 913 F.2d 993 (2d Cir.1990); *United States v. Esposito*, 912 F.2d 60 (3d Cir. 1990), *cert. dismissed*, — U.S. —, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991); *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.

1990), *cert. denied*, — U.S. —, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991); *United States v. Russo*, 906 F.2d 77 (2d Cir.1990).[5] With the exception of *Russo*, [6] these cases all have reached the conclusion that *Garrett* remains controlling precedent in RICO and CCE cases.

The present case and, indeed, RICO cases in general are readily distinguishable from *Grady*. The later indictment in *Grady* charged the defendant with reckless manslaughter, criminally negligent homicide, and third-degree reckless assault, all arising from a single, discrete act of drunken driving. By contrast, the indictment in the present case charged Mr. O'Connor with a fourteen-year pattern of racketeering activity. The statutes at issue in *Grady* focused on a specific, particular act, while the RICO statute is addressed to complex, long-term conduct. In addressing this difference, our colleagues in the Third Circuit observed that

4. Because of the statute of limitations, the district court instructed the jury that in order to find Mr. O'Connor guilty of the RICO charge, it had to find that Mr. O'Connor committed predicate act number eight, the arson that was also the subject of count two. Because the jury did not return a special verdict, it is impossible to know whether the second predicate act found by the jury was one of the previously unprosecuted predicate acts or one of the predicate acts for which Mr. O'Connor already had been convicted.

5. The Supreme Court has granted certiorari on the issue of whether a defendant may be prosecuted for conspiracy after having been prosecuted for conduct alleged in some overt acts of the conspiracy charge. *See United States v. Felix*, 926 F.2d 1522 (10th Cir.), *cert. granted*, — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991). Other circuits also have addressed the applicability of *Grady v. Corbin* in conspiracy cases with conflicting results. *Grady* has been applied to bar successive prosecutions in *United States v. Felix*, 926 F.2d 1522 (10th Cir.1991) (Fifth Amendment barred prosecution for conspiracy, manufacturing and possessing with intent to distribute methamphetamine after conviction on single count of attempt to manufacture methamphetamine), *cert. granted*, — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991); *United States v. Calderone*, 917 F.2d 717 (2d Cir.1990) (after acquittal on larger conspiracy, reprosecution on smaller conspiracy involving same events violates Double Jeopardy Clause). In *United States v. Gambino*, 920 F.2d 1108, 1111–13 (2d Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991), the Second

Circuit applied *Grady* in vacating a conspiracy conviction which "rest[ed], at least partially, on overt acts for which Gambino has been previously prosecuted," but upheld CCE and RICO convictions in which the defendants had been previously prosecuted for some of the predicate acts. *But see United States v. Rivera–Feliciano*, 930 F.2d 951 (1st Cir.1991) (no double jeopardy when defendant prosecuted first for distribution, then for conspiracy to possess drugs with intent to distribute and possession with intent to distribute); *United States v. Clark*, 928 F.2d 639 (4th Cir.1991) (no double jeopardy when defendant was first convicted of possessing heroin with intent to distribute and then was indicted with others for conspiracy to distribute heroin and to possess with intent to distribute).

6. *United States v. Russo* offers a significantly different factual and procedural context from the other cases cited. In *Russo*, the defendant was acquitted in a RICO prosecution and was later retried and convicted for conduct which had been alleged as a predicate act in the RICO prosecution. *Grady* was decided after the oral argument in *Russo*, and the court directed the parties to submit briefs on *Grady*'s impact on the case. In its brief, the government conceded that the later prosecution was inconsistent with *Grady* and moved to remand for entry of a *nolle prosequi*. The Second Circuit granted the government's motion. The Tenth Circuit has suggested in dictum that *Grady* does bar successive prosecutions for predicate acts and the RICO offense. *See United States v. Felix*, 926 F.2d 1522, 1527 n. 5 (10th Cir.), *cert. granted*, — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991).

the reasoning in [*Grady*] logically extends only to offenses arising from a single discrete event. We do not think that the Supreme Court meant to imply that the double jeopardy clause forecloses successive prosecutions in cases of compound-complex felonies such as RICO, which involve several criminal acts occurring at different times in different places.

*United States v. Pungitore*, 910 F.2d 1084, 1109 (3d Cir.1990). The Third Circuit also observed that the cases relied upon in *Grady—Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)—also involved discrete criminal events. Thus, the court concluded:

> We realize that the language employed by the Supreme Court in its formulation of the "same conduct" test could be interpreted as extending double jeopardy protection to all situations where the government intends again to prove conduct constituting an offense subject to an earlier conviction. But we would not be justified in reading *Grady* so expansively.

*Id.* at 1110.

We agree with the Third Circuit's assessment of the *Grady* decision and its conclusion that it does not overrule *Garrett*. In *Garrett*, the defendant had been previously convicted of drug trafficking in federal court in Washington. Subsequently, the defendant was indicted in federal court in Florida for engaging in a continuing criminal enterprise, in violation of the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. The prosecutor relied on the drug trafficking conviction in Washington as one of the predicate offenses required by the CCE statute. The Supreme Court assumed *arguendo* that the drug trafficking offense would be a lesser included offense of the CCE, but still rejected the defendant's argument that the rule in *Brown v. Ohio* barred the use of the prior crime as a predicate act:

> We think there is a good deal of difference between the classic relation of the "lesser included offense" to the greater offense presented in *Brown*, on the one hand, and the relationship between the [predicate] marihuana offense and the CCE charge involved in this case, on the other. The defendant in *Brown* had stolen an automobile and driven it for several days. He had engaged in a single course of conduct—driving a stolen car. *The very same conduct would support a misdemeanor prosecution for joyriding or a felony prosecution for auto theft, depending only on the defendant's state of mind while he engaged in the conduct in question. Every moment of his conduct was as relevant to the joyriding charge as it was to the auto theft charge.*

*Garrett*, 471 U.S. at 787, 105 S.Ct. at 2415 (quoted and emphasis supplied in *Pungitore*, 910 F.2d at 1111). The Third Circuit concluded that "*Grady*, which finds its roots in 'single transaction' cases such as *Brown*, is no more applicable in [CCE or RICO cases] than *Brown* was in *Garrett*." *Pungitore*, 910 F.2d at 1111. Like the Third Circuit, we believe that *Grady* controls single transaction cases like *Brown*, while *Garrett* remains the standard for double-jeopardy problems involving "successive prosecutions in cases of compound-complex felonies such as RICO." *Pungitore*, 910 F.2d at 1109; *see also United States v. Arnoldt*, 947 F.2d 1120, 1126 (4th Cir.1991) ("principles enunciated in *Grady* govern the paradigmatic 'single course of conduct' case, but ... prosecutions under statutes such as RICO and CCE—statutes targeted at 'multilayered' instances of criminal conduct invariably occurring at different places and times—call for a calculus reflecting the concerns expressed in *Garrett*."); *United States v. Gonzalez*, 921 F.2d 1530, 1535–39 (11th Cir.1991) (same).

Most fundamentally, we do not read *Grady* as overturning, *sub silentio*, *Garrett*. *Grady* briefly quotes *Garrett* twice, *see* 110 S.Ct. at 2091–92, 2094 n. 15, but does not discuss the substance of the opinion or attempt to reconcile its holding. Such a noticeable absence of substantive discus-

sion leads us to believe that *Grady* was not meant to affect the holding in *Garrett*.[7]

## B.

▪ Mr. O'Connor raises the further argument that the continuation of the CCE offense past the date of the prosecutions of the predicate acts was essential to the *Garrett* holding. It is true that in *Garrett* the Supreme Court regarded as significant the fact that the continuing criminal enterprise had not been completed when the defendant was indicted for the particular predicate offenses. *See Garrett*, 471 U.S. at 791–92, 105 S.Ct. at 2417–18. As the Court pointed out, "[t]he continuing criminal enterprise charged against Garrett in Florida had not been completed at the time he was indicted [for the predicate act]." *Id.* at 791, 105 S.Ct. at 2417. "One who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." *Id.* at 790, 105 S.Ct. at 2417; *see also id.* at 797–98, 105 S.Ct. at 2420–21 (O'Connor, J., concurring) ("Where the defendant continues unlawful conduct after the time the Government prosecutes him for a predicate offense, I do not think he can later contend that the Government is foreclosed from using that offense in another prosecution to prove the continuing violation of § 848."). Indeed, Justice O'Connor also noted that in *Garrett* the Court was not deciding "whether a defendant would have a valid double jeopardy claim if the Government failed in a later prosecution to allege and to present evidence of a continuing violation of § 848 after an earlier conviction for a predicate

offense." *Id.* at 799, 105 S.Ct. at 2422. She observed that "[c]ertainly the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution." *Id.* at 799, 105 S.Ct. at 2422. Consequently, in the courts of appeals, many decisions have stressed, or at least noted, the fact of continuing CCE or RICO activity which post-dated the prosecutions for the predicate offenses. *See, e.g., United States v. Coonan*, 938 F.2d 1553, 1563 (2d Cir.1991); *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990); *United States v. Pungitore*, 910 F.2d 1084, 1111 (3d Cir. 1990); *United States v. Persico*, 774 F.2d 30, 32 (2d Cir.1985).[8]

In Mr. O'Connor's case, the RICO offense alleged was completed by September 10, 1986. Consequently, we cannot rest our decision on the narrow ground that the wrong-doing at issue in the RICO charge persisted after the indictment for the last predicate offense. Nevertheless, we conclude that the principles underlying the Double Jeopardy Clause are not violated by the RICO conviction. In her concurring opinion in *Garrett*, Justice O'Connor noted that the decisions of the Supreme Court "have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law." *Garrett*, 471 U.S. at 796, 105 S.Ct. at 2420 (O'Connor, J., concurring). More specifically, she pointed out that "absent 'governmental oppression of the sort against which the Double Jeopardy Clause

7. *See Pungitore*, 910 F.2d at 1084 n. 29 ("We dismiss out of hand the possibility that *Grady* overruled *Garrett*. If the Supreme Court on such grossly dissimilar facts intended to abandon *Garrett*, we think it would have said so. Instead both the majority and the dissent in *Grady* cited *Garrett* without ever hinting that *Garrett* no longer was good law."); *see also United States v. Scarpa*, 913 F.2d 993, 1013–14 n. 8 (2d Cir.1990); *United States v. Esposito*, 912 F.2d 60, 65 (3d Cir.1990), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991).

8. The Third Circuit, however, has held that a subsequent prosecution of a predicate act, after the defendant has been prosecuted but acquitted under RICO, does not violate the Double Jeopardy Clause, *even in a case "where all the events necessary to the second prosecution had [ ] taken place at the time of the first" and "where the facts underlying the second prosecution were unknown or unavailable at the time of the first." United States v. Esposito*, 912 F.2d 60, 62 (3d Cir.1990) (emphasis added), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991).

was intended to protect,' ... the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding." *Id.* (quoting *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978)). As we shall explain in the paragraphs that follow, we are convinced that the legitimate requirements of law enforcement, embodied in the RICO statute, make a compelling case for permitting deferral of the prosecutorial decision to invoke the statute. On the other hand, we see, at least on this record, little, if any, infringement on the values protected by the Double Jeopardy Clause.

A RICO offense is not, of course, in any sense the "same" offense as the predicate offenses. *See United States v. Gonzalez,* 921 F.2d 1530, 1538 (11th Cir.1991). Indeed, as our colleagues in the Fourth Circuit have noted recently in *Arnoldt,* 947 F.2d at 1127 n. 8, before the underlying offenses have any significance for a RICO prosecution, they must constitute a pattern of racketeering activity because of their relationship and because "they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1988). In short, in order to prevail on a RICO charge, the government must prove a sort of antisocial conduct entirely different, in both type and magnitude, from the underlying offenses. A responsible prosecutorial decision to seek a RICO indictment requires careful, and at times painstaking, review not of a single criminal act, but of a complex series of transactions often spanning many years and many states. By contrast, the underlying predicate acts may have been committed in any federal or state jurisdiction and, when viewed in isolation by a local prosecutor, may reveal none of the racketeering

characteristics that would justify a RICO prosecution.

In *Garrett,* Justice O'Connor, referring to prosecutorial decisions under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848, noted that, at least where the criminal act continued, double jeopardy ought not "force the Government's hand" by requiring the Government to choose between prosecuting a defendant on the offense of which it could prove him guilty and releasing him in the hope of later being able to establish the CCE offense. Rather, she suggested, "[t]he decision to bring charges ... will necessarily and appropriately depend on prosecutorial judgments concerning the adequacy of the evidence, the efficient allocation of enforcement resources, and the desirability of seeking the statute's severe sanctions." *Garrett,* 471 U.S. at 798, 105 S.Ct. at 2421 (O'Connor, J., concurring). Whatever the assessment in regard to CCE offenses, we respectfully suggest that, in regard to RICO offenses, important considerations counsel us to decline to limit *Garrett* to cases where the government has alleged a RICO offense which continues beyond the date of prosecution for previous offenses. It is not realistic to expect a responsible prosecutor, dealing only with a single predicate offense, necessarily to determine at that time that it is permissible, practical and prudent to proceed under the RICO statute as well. We agree with our colleagues in the Fourth Circuit that "[w]ithout ample discretion, the government would be forced to either proceed against a defendant for violations that might later serve as predicate acts and foreclose a RICO prosecution in the future or allow predicate acts to go unpunished in anticipation that at some future time the RICO elements would coalesce." *Arnoldt,* 947 F.2d at 1127.[9]

We also note that the record before us contains no evidence that any of the policy concerns identified in *Grady* as animating

---

**9.** We need not decide whether unreasonable delay in bringing the RICO charge ought to be assessed in terms of the Double Jeopardy Clause or, as our colleagues in the Eleventh Circuit have held, under the Due Process Clause. *See*

*United States v. LeQuire,* 943 F.2d 1554, 1560 (11th Cir.1991) (applying *Garrett* to RICO double jeopardy analysis, but analyzing pre-indictment delay under Fifth Amendment's Due Process Clause).

the Double Jeopardy Clause are at risk here. There is no showing of deliberate delay or improper tactical maneuvering. Nor is this a case of a multiple prosecution that gives the government "an opportunity to rehearse its presentation of proof." *See Grady,* 110 S.Ct. at 2091–92.

Although in Mr. O'Connor's case the government did not allege RICO activity post-dating his earlier indictments, we believe the government should not have to forego a later RICO prosecution because it had already prosecuted Mr. O'Connor for some of the predicate acts alleged in the RICO indictment.[10]

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

**10.** We also note that *Garrett* suggests that we consider not only whether the racketeering activity continued after the date of prosecution of a predicate offense, but also whether the government *had the evidence* to bring the racketeering charge at the time of prosecution for the predicate offense. *See Garrett,* 471 U.S. at 785, 105 S.Ct. at 2414. Similarly, in *Brown v. Ohio,* the Court noted that an exception to the normal principles barring double jeopardy "may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or *have not yet been discovered* despite the exercise of due diligence." 432 U.S. 161, 169 n. 7, 97 S.Ct. 2221, 2227 n. 7, 53 L.Ed.2d 187 (1977) (emphasis added). *See also Jeffers v. United States,* 432 U.S. 137, 152, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977) (same); *United States v. Persico,* 774 F.2d 30 (2d Cir. 1985) (in case where RICO activity continued after the earlier indictment, not deciding wheth-

er "subsequent RICO charges can survive double jeopardy objections only if the subsequent indictment alleges conduct that post-dates the plea to the prior charges or if *evidence, accumulated subsequent to that plea, establishes either a second predicate offense or participation in a criminal enterprise* ").

Here, the government contends that, because the testimony of several key witnesses was not yet available, it was unable to begin the RICO prosecution prior to the time Mr. O'Connor was prosecuted for the crimes that later were alleged as predicate acts three and five. It also suggests that any delay in the government's prosecution of Mr. O'Connor's RICO offense was largely due to Mr. O'Connor's own efforts at obstruction of justice, for which he was convicted along with the RICO charge in the proceedings at issue here. The district court did not address this ground and we believe that it would be inappropriate for us to make an independent assessment of those factual representations.